ARTHUR T. BROOKS & others *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk.     June 28, 1926. — September 17, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Constitutional Law,* Initiative.   *Mandamus.   Res Judicata.   Practice, Civil,* Parties.   *Supreme Judicial Court,* Application for rehearing.

Citizens and voters in the Commonwealth have a standing as such to maintain a petition for a writ of mandamus to compel the Secretary of the Commonwealth to perform his public duty of omitting from the ballot at the next election a proposed law which he intends to print on the ballot under the initiative provisions of art. 48 of the Amendments to the Constitution, where the petitioners contend that the constitutional requirements precedent to the existence of a right to have the proposed law on the ballot have not been complied with in that the petition on which were procured the five thousand signatures necessary after the rejection of the measure by the General Court contained at the top a description of the proposed law which was substantially and vitally different from the proposed law and from the description of it contained in the initiative petition signed by not less than twenty thousand voters.

The dismissal on the merits of two petitions brought by citizens and voters of the Commonwealth, one for a writ of certiorari against the Attorney General to quash a certification by him that a law proposed by initiative proceedings under art. 48 of the Amendments to the Constitution contained only subjects not excluded from the popular initiative, and the other for a writ of mandamus to prevent the Secretary of the Commonwealth from submitting the petition to the people, where the same ground was relied on by the petitioners in both petitions and was that the proposed law was not a proper subject for an initiative petition because it related to religion and religious practices and religious institutions and because it was restricted in its operation to particular cities and towns, does not make *res judicata* a petition by different citizens and voters for a writ of mandamus to compel the Secretary of the Commonwealth to omit the proposed law from the ballot because the constitutional requirements precedent to the existence of a right to have it on the ballot had not been complied with in that the petition on which were procured the five thousand signatures necessary after

the rejection of the measure by the General Court contained at the top a description of the proposed law which was substantially and vitally different from the proposed law and from the description of it contained in the initiative petition signed by not less than twenty thousand voters: the parties petitioners in the subsequent proceedings being different from those in the earlier proceedings and not being privies with them, and the question of law raised by the later proceedings not having been within the scope of the earlier proceedings.

The five thousand or more additional signatures which are a prerequisite to the submission to the people of a proposed law under the initiative proceedings described in art. 48 of the Amendments to the Constitution after the law has been rejected by the General Court, must be appended to a petition containing a description of the proposed law the same in substance as that upon the initiative petition which previously had been signed by not less than twenty thousand voters and had been submitted to and rejected by the General Court; and if the five thousand or more additional voters signed a petition containing a description substantially and vitally different from the proposed law and from the description of it on the petition signed by the twenty thousand or more voters, a writ of mandamus should issue to compel the Secretary of the Commonwealth to omit the proposed law from the ballot.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on June 7, 1926, and described in the opinion.

The petition was reserved by *Sanderson,* J., for determination by the full court.

The case was submitted on briefs.

*S. W. Mendum* & *H. S. Davis,* for the petitioners.

*J. R. Benton,* Attorney General, *A. Lincoln,* Assistant Attorney General, & *M. F. Weston,* Assistant Attorney General, for the respondent.

RUGG, C.J. This is a petition for a writ of mandamus to compel the respondent to omit from the ballot for the next State election a proposed law which he intends to print on the ballot under the initiative procedure provided by art. 48 of the Amendments to the Constitution.

1. The petitioners as citizens and voters have standing to maintain this petition. That is settled by *Brewster* v. *Sherman,* 195 Mass. 222, where Chief Justice Knowlton, after saying that the proposition, that in order to maintain a petition for a writ of mandamus one should have a private right or interest in the matter beyond the right and interest of citizens in general, had sometimes been stated as the rule and

was correct in its application to some cases, and referring to *Wellington, petitioner,* 16 Pick. 87, 105, and *Pearsons* v. *Ranlett,* 110 Mass. 118, 126, stated the general rule to be: "'When the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party in interest, and the relator at whose instigation the proceedings are instituted need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and as such interested in the execution of the laws.' . . . This is the rule applied in *Union Pacific Railroad* v. *Hall,* 91 U. S. 343, 354, 355, and, as shown in that case, it prevails also in England. . . . In *Attorney General* v. *Boston,* 123 Mass. 460, 479, Chief Justice Gray says: 'There is a great weight of American authority in favor of the doctrine that any private person may move, without the intervention of the attorney general, for a writ of mandamus to enforce a public duty not due to the government as such.'" That general rule has been affirmed and applied in *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556, 559, *Sinclair* v. *Mayor of Fall River,* 198 Mass. 248, 256, *Cox* v. *Segee,* 206 Mass. 380, 381, *Attorney General* v. *Suffolk County Apportionment Commissioners,* 224 Mass. 598, 610, *Donovan* v. *Suffolk County Apportionment Commissioners,* 225 Mass. 55, 57, *Loring* v. *Young,* 239 Mass. 349, 357, *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165, 169.   *O'Brien* v. *Turner,* 255 Mass. 84.   *Bancroft* v. *Building Commissioner of Boston,* this day decided, *ante,* 82.   See *Anderson* v. *Secretary of the Commonwealth,* 255 Mass. 366.   The decision in *McGlue* v. *County Commissioners,* 225 Mass. 59, is quite distinguishable. *Frothingham* v. *Mellon,* 262 U. S. 447, 486, 487, rests upon grounds inapplicable to the case at bar.   See *Baldwin* v. *Wilbraham,* 140 Mass. 459.

Mandamus is a discretionary writ and issues only in the exercise of sound judicial discretion.   *Smith* v. *Commissioner of Public Works of Boston,* 215 Mass. 353, and cases there cited.   *Brattin* v. *Civil Service Commissioners,* 249 Mass. 170. Hence there is little danger that the public interests will be adversely affected by the institution of litigation by volun-

teers and strangers.    Where genuine wrongs and something more than faults purely technical, or failure in literal compliance with subsidiary requirements, are not disclosed, courts would not be likely to entertain such petitions.

. The case at bar falls within the rule of *Brewster* v. *Sherman, supra.*    The present petitioners seek the enforcement of public duty by an officer with respect to a public right in which the voters at large have an interest.

2. The decision in *Anderson* v. *Secretary of the Commonwealth, supra,* is not a bar to the present proceeding.    That was a petition to require the defendant not to put upon the ballot the same question which is described in the present petition.    No one of the present petitioners was a party to that proceeding.    The question of law there raised was wholly different from that raised in the case at bar.    No allusion was made in that petition to the ground on which the present petition rests.    This ground was not within the scope of the petition in the Anderson case.    It could not have been made the basis of relief in that case without an amendment to the petition.    It is contended that the decision in the Anderson case is a bar under the doctrine of *res judicata.*    Estoppel by *res judicata* can be invoked as a defence when the plaintiff was either a party or a privy to a prior judgment on the same cause of action brought against the same defendant.    It is a doctrine quite different from that of *stare decisis.*    The present petitioners were not parties to the Anderson case.    It cannot be said with due regard to the commonly accepted definitions of privity that one citizen as member of the general public is in privity with another such citizen with whom he has had no relations in fact. The definition of privity in 1 Greenl. Ev., § 523, adopted by the Supreme Court of the United States in *Litchfield* v. *Goodnow's Administrator,* 123 U. S. 549, 551, namely, " . . . mutual or successive relationship to the same rights of property," cannot well be stretched to include a case like the present.    In *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, at page 218, it is said: "One comprehensive definition of privies is such persons as are 'privies in estate — as donor and donee, lessor and lessee

and joint tenants; or privies in blood — as heir and ancestor; or privies in representation — as executor and testator or administrator and intestate; or privies in law — where the law without privity in blood or estate casts land upon another, as by escheat.' *Buckingham* v. *Ludlum*, 10 Stew. 137, 141. *Douglass* v. *Howland*, 24 Wend. 35, 53." The doctrine of *res judicata* also is founded in part on the fact that it is in the interests of the Commonwealth and conserves the peace and repose of society that questions once decided should be forever removed from litigation. On principle it is difficult to conceive of different citizens, who in fact have no relation to each other except their common citizenship, who may reside in different communities and who may know nothing about the actions of each other, having a privity of interest in litigation without any information concerning it. The question of law now raised was not within the scope of that petition. The circumstance that an application for a reargument of that case was made, in which reference is made to the point here presented, is of slight, if any, consequence. "Such an application has no standing under our laws as a recognized part of our procedure, but is received only as friendly information to the justices of an oversight or manifest error." *Wall* v. *Old Colony Trust Co.* 177 Mass. 275, 278. *Powers* v. *Sturtevant*, 200 Mass. 519, 521. It is too elementary for discussion that a case cannot be decided on grounds not raised by its pleadings or evidence. It has sometimes been said that the doctrine of *res judicata* applies by analogy to proceedings having a more or less remote similitude to the case at bar.* We do not pause to review such decisions, nor to determine how many of them are distinguishable on grounds of State procedure or difference in decisive facts, because the present decision rests upon other grounds. Whatever may be said

---

* *Tallassee* v. *State*, 206 Ala. 169. *People* v. *Clark*, 296 Ill. 46, 50. *Greenberg* v. *Chicago*, 256 Ill. 213. *Sabin* v. *Sherman*, 28 Kans. 289. *Floersheim* v. *Board of Commissioners*, 28 N. M. 330, 335. *Eaton* v. *Mooresville Graded School*, 184 N. C. 471. *State* v. *Willis*, 19 N. D. 209. *Ashton* v. *Rochester*, 133 N. Y. 187, 193. *State* v. *Chester & Lenoir Narrow Gauge Railroad*, 13 S. C. 290. *Lindsay* v. *Allen*, 112 Tenn. 637, 655–657. *Hovey* v. *Shepherd*, 105 Texas, 237. *State* v. *Superior Court*, 70 Wash. 670. Freem. Judgments, (5th ed.) §§ 437, 510.

about the doctrine of suits by a few as representatives of a class, *Spear* v. *H. V. Greene Co.* 246 Mass. 259, 266, 267, that principle does not seem to us necessarily applicable to a case like the present. The case at bar relates to the exercise of fundamental rights under the Initiative and Referendum Amendment to the Constitution. It touches voting throughout the State upon a matter of public interest. More or less discussion of fundamental public policy is involved touching a subject about which there may be a wide divergence of views. The Constitutional Amendment as to the Initiative and Referendum is comparatively new. The practice under it has not become fixed by experience or custom. It is of primary public importance that the submission of questions to a State wide vote should follow the requirements of that Amendment. We are of opinion, in view of all the circumstances here presented, that the case at bar ought to be considered on its merits and that the doctrine of *res judicata* ought not to be applied. *Price* v. *Gwin,* 144 Ind. 105. *Detroit* v. *Detroit Railway,* 134 Mich. 11. *State* v. *Stock,* 38 Kans. 184. *Wabash Railroad* v. *Adelbert College,* 208 U. S. 38, 58. *Boyd* v. *Alabama,* 94 U. S. 645, 648.

3. An initiative petition was duly filed and introduced into the General Court in accordance with art. 48, Part II, §§ 3, 4, Part V, § 1, of the Amendments to the Constitution, having been signed by not less than twenty thousand voters. By the vote taken by the General Court under Part V, § 1, the proposed law failed of enactment. Further procedure is provided by Part V, § 1, in these words: "If an initiative petition for a law is introduced into the general court, signed by not less than twenty thousand qualified voters, a vote shall be taken by yeas and nays in both houses before the first Wednesday of June upon the enactment of such law in the form in which it stands in such petition. If the general court fails to enact such law before the first Wednesday of June, and if such petition is completed by filing with the secretary of the commonwealth, not earlier than the first Wednesday of the following July nor later than the first Wednesday of the following August, not less than five thousand signatures of qualified voters, in addition to those sign-

ing such initiative petition, which signatures must have been obtained after the first Wednesday of June aforesaid, then the secretary of the commonwealth shall submit such proposed law to the people at the next state election." The words "such petition" in the second sentence of this quotation refer to the "initiative petition," requiring the signatures of twenty thousand qualified voters, and described with its essential procedure in Part II, §§ 2 and 3. Material words in § 3 are as follows: "Such petition shall first be signed by ten qualified voters . . . and . . . [after proceedings not here relevant] . . . it may then be filed with the secretary of the commonwealth. The secretary of the commonwealth shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a description of the proposed measure as such description will appear on the ballot together with the names and residences of the first ten signers." The additional signatures of not less than five thousand voters must be appended to a petition the same in substance as the initiative petition signed by not less than twenty thousand voters. Such additional signatures of not less than five thousand voters are included within the words, "for the use of subsequent signers," for whom the blanks must be provided by the Secretary of the Commonwealth. That is the fair interpretation of the words of the Amendment. That construction, also, is the one most consonant with the general design and purpose of the Initiative. Both petitions are in the end part of the same petition, the only distinction being the different times at which the signatures may be procured. Both must follow the same procedure.

The description of the proposed measure as it will appear on the ballot must be determined by the Attorney General. "General Provisions," Part III. It is that description which must be in the "initiative petition," signed both by the twenty thousand qualified voters required for the introduction of the measure into the General Court and by the additional five thousand qualified voters required for putting the proposed law on the ballot. That description is not required on the petition signed by the original ten signers, because not made until after that petition is filed. That

petition contains the text of the proposed measure. That description in the case at bar, as prepared by the Attorney General, was in these words:

"'An Act to permit certain sports and games on the Lord's day.'

"DESCRIPTION OF PROPOSED LAW.

"The proposed law provides that it shall be lawful in any city which accepts the act by vote of its city council and in any town which accepts the act by vote of its inhabitants, to take part in or witness any athletic outdoor sport or game, except horse racing, automobile racing, boxing or hunting with firearms, on the Lord's day between 2 and 6 P.M., that such sports or games shall take place on such playgrounds, parks or other places as may be designated in a license issued by certain licensing authorities; that no sport or game shall be permitted in a place, other than a public playground or park, within one thousand feet of any regular place of worship; that the charging of admission fees or the taking of collections or the receiving of remuneration by any person in charge of or participating in any such sport or game shall not be prohibited; that the license may be revoked; and that in cities and towns in which amateur sports or games are permitted under existing law such amateur sports or games may be held until the proposed law is accepted or the provisions of the existing law fail of acceptance or resubmission to the people."

The additional petition signed by the "not less than five thousand signatures of qualified voters, in addition to those" who had already signed the initiative petition, described the proposed law in these words: "Shall the proposed law which provides that it shall be lawful in all cities and towns, where the mayor and city council or selectmen accept the act, to participate in or witness a game of baseball on the Lord's Day, between two and six P.M., where the players are paid for their services; that an admission fee to such games may be charged, and that such games shall take place in such parks or places as may be designated in a license or permit issued by the city council, with the mayor's approval, or by the selectmen, which law was disapproved in the Senate by a

vote of 7 in the affirmative and 25 in the negative, and in the House of Representatives by a vote of 51 in the affirmative and 152 in the negative, be approved?"

It is manifest that there are substantial and vital differences between the proposed law and the description of it contained in the initiative petition signed by not less than twenty thousand voters, on the one hand, and the description of it contained in the additional petition signed by five thousand voters, on the other hand. The proposed law permits under the specified conditions "any athletic outdoor sport or game, except horse racing, automobile racing, boxing or hunting with firearms, on the Lord's Day," while the additional petition last filed describes the proposed law as permitting "a game of baseball on the Lord's Day." The proposed law provides that it shall become operative in towns when accepted by vote of its inhabitants, while the additional petition provides that it shall be operative in towns when accepted by the selectmen. Such divergence and variation in matters of substance are not in conformity to the requirements of the Amendment. The provisions of the Amendment are mandatory. They are not merely directory. *Attorney General* v. *Methuen*, 236 Mass. 564, 575, 576. This divergence of description is not overcome or met by the reference to the vote in the two Houses upon a law. That law was not before the voters in signing the additional petition. The precise and limited description of the proposed law in that petition cannot by any rational construction or interpretation be held to apply to such a law as accompanied the initiative petition.

It follows that there has been no substantial compliance with the imperative requirements of art. 48 of the Amendments to the Constitution as to putting on the ballot a question under the initiative petition. Therefore, the law ought not to be submitted to the voters.

*Peremptory writ to issue as prayed for.*