FRANKLIN P. HORTON & others *vs.* ATTORNEY GENERAL.

SAME *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk.    December 9, 1929. — December 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, &
FIELD, JJ.

*Constitutional Law,* Initiative.  *Jurisdiction.  Certiorari.  Mandamus.  In-
surance,* Compulsory motor vehicle liability.  *Attorney General.  Su-
preme Judicial Court.  Practice, Civil,* Parties.

An initiative petition under art. 48 of the Amendments to the Constitu-
tion set forth a proposed law repealing St. 1925, c. 346, and amend-
ments thereto, creating a corporation to be managed by a board
appointed by the Governor, and requiring applicants for registra-
tion of motor vehicles to make payments to the corporation, accord-
ing to certain classifications established from time to time by the
board as fair and reasonable, in return for indemnification by the
corporation, within certain limits and for a certain time, against loss
resulting from liability for bodily injuries or death arising out of the
ownership, operation, maintenance, control or use of such motor
vehicles upon the ways of the Commonwealth.  The petition was
signed by ten voters.  The Attorney General certified it under Part II,
§ 3 of said art. 48 and it was filed with the Secretary of the Common-
wealth.  Upon a petition thereafter brought in the Supreme Judicial
Court by ten citizens and taxpayers of the Commonwealth, for a writ
of certiorari to quash the certificate by the Attorney General on the
ground that it "was improvidently issued and is erroneous as a mat-
ter of law"; and a petition in that court by the same petitioners for
a writ of mandamus to command the Secretary of the Commonwealth
to refrain from taking the steps prescribed by said art. 48 to complete
the initiative petition and to transmit it to the House of Representa-
tives, it was *held,* that

(1) The court had jurisdiction of the issues presented by the peti-
tions: they presented a justiciable question, whether the certificate
of the Attorney General conformed to the provisions of said art. 48;

(2) The petitioners were proper parties to maintain proceedings to
present that question;

(3) The proposed law would create a *quasi* public corporation
and would not bar applicants for registration of motor vehicles from
making any appropriate appeal to the courts respecting the propriety
of the payments which the board might require them to make to the
corporation;

(4) Therefore, although the proposed law contained no express
provision for a judicial review of such payments, it could not be said

that it was inconsistent with "the right of access to and protection in courts of justice" and for that reason one of the "Excluded Matters" specified by Part II, § 2 of said art. 48;

(5) Provisions of the proposed law, that every accident involving a motor vehicle and resulting in personal injuries must be investigated by the registrar of motor vehicles; and that such part of the expense of those investigations as should be determined by certain officials should be paid by the corporation, without any provision for judicial review of the decision of such officials, did not render the proposed law an excluded matter specified by said § 2, either on the ground that it was inconsistent with "the right of access to and protection in courts of justice" or on the ground that it was a measure relating to the powers of courts;

(6) The proposed law was not a measure relating to the powers of courts in that it would repeal the provision of St. 1925, c. 346, and amendments thereto limiting the time for bringing actions to one year, or in that it would repeal the other provisions of said statute and amendments;

(7) Provisions of the proposed law, that the payments made to the corporation should be paid over by the registrar of motor vehicles to the State Treasurer, to be held by him as custodian of the moneys of the corporation and disbursed by him under the direction of its managing board, did not render the proposed law one that "makes a specific appropriation of money from the treasury of the Commonwealth" within the prohibition of said § 2;

(8) A provision of the proposed law, that certain sections should "take effect upon the passage of this act," although inaccurate as referring to the approval of the voters on an initiative petition, would not make the act, if approved by the voters, invalid under Part V, § 1 of said art. 48;

(9) It was not open to the petitioners in these proceedings to contend that the proposed law would contravene provisions of the Constitution other than said art. 48: the courts have no jurisdiction to consider the constitutionality of legislation until that issue is raised by someone whose rights are impaired thereby;

(10) The proposed law did not so fail to conform to said art. 48 that it should not be transmitted to the House of Representatives;

(11) The petitions must be dismissed.

PETITION for a writ of certiorari, filed in the Supreme Judicial Court for the county of Suffolk on November 2, 1929.

The petitioners alleged that they were citizens and taxpayers of the Commonwealth; that on November 1, 1929, there had been filed with the Secretary of the Commonwealth a petition under art. 48 of the Amendments to the Constitution, signed by ten qualified voters, for the enactment of a certain law described in the opinion; that the

respondent had certified the petition under Part II, § 3, of said art. 48; and that such certificate "was improvidently issued and is erroneous as matter of law." The petitioners prayed that the respondent's certificate be quashed. Also, a

PETITION for a writ of mandamus, filed in the same court on the same date.

This petition contained allegations similar to those of the first petition; and also an allegation that the respondent intended to take the steps required of him by said art. 48 to complete said initiative petition and to transmit it to the House of Representatives. The petitioners prayed that the respondent be commanded to refrain from taking such steps.

By order of *Sanderson*, J., the cases were consolidated and were reserved upon the pleadings for determination by the full court.

The case was argued at the bar in December, 1929, before *Rugg*, C.J., *Pierce, Wait, Sanderson, & Field*, JJ., and afterwards was submitted on briefs to all the Justices. Rescript issued on December 31, 1929.

*G. Gleason*, for the petitioners.

*R. Clapp*, Assistant Attorney General, for the respondents.

RUGG, C.J. These two petitions, one for a writ of certiorari against the Attorney General and the other for a writ of mandamus against the Secretary of the Commonwealth, having the same ultimate object, have been consolidated for the purpose of being heard together and have been reserved upon the pleadings for our determination.

The pertinent facts disclosed by the record are that under art. 48 of the Amendments to the Constitution an initiative petition setting forth the text of a law proposed, duly signed by ten qualified voters, was submitted to the Attorney General. The title of the proposed law is "An Act to create a motor vehicle insurance fund for the purpose of providing compensation for injuries and deaths due to motor vehicle accidents." The main provisions of the proposed law, summarily stated, are that the present statutes (St. 1925, c. 346, and all its amendments) requiring owners of motor vehicles to furnish security for their civil liability for per-

sonal injuries caused by their motor vehicles are repealed. A body corporate known as The State Motor Vehicle Insurance Fund (hereafter called the "Fund") is created, to be under the control and management of a board of three, a commissioner and two associate commissioners, appointed by the Governor. No motor vehicle (with certain exceptions) shall be registered unless the application is accompanied by a contribution to the "Fund" according to specified classifications, which may be altered from time to time by the board of commissioners, in order to secure or maintain fair and reasonable classifications and adequate, just or reasonable charges. Such contributions shall be deposited with the Treasurer and Receiver General, who is made custodian of the "Fund," and shall be used to carry out the provisions of law relative to the "Fund" after first paying the expenses of administration under the proposed law. A person thus paying a contribution makes a contract of insurance with the "Fund" whereby he is to be indemnified during the term of the contract against loss within specified limits resulting from liability to pay damages for bodily injuries or death arising out of ownership, operation, maintenance, control or use of such motor vehicle upon the ways of this Commonwealth. The contract terminates upon the expiration, revocation or suspension of the registration of the motor vehicle. The board shall defend, or may settle in the name and on behalf of the assured, any actions and claims, and shall pay all expenses in connection therewith, and shall be subrogated, to the extent of such payments to claimants, to the rights of the assured against others. The board is enjoined to file annually with the insurance commissioner a report of the finances of the "Fund" similar to that required of insurance companies.

The registrar of motor vehicles must investigate every accident in which a motor vehicle is involved where personal injury did or may result, and file a report with the board. Such proportion of the expenses thereof, including salaries, as may be agreed upon by the registrar, the commissioner of the "Fund," and the chairman of the department of administration and finance, shall be charged to the "Fund."

The one year statute of limitations applicable to actions under the present automobile security law is repealed. No appropriation shall be made by the Commonwealth for current or ordinary expenses of the "Fund," and the board of commissioners is authorized to provide by temporary loan for carrying out provisions of law relative to the "Fund." Sections 1 and 2 of the proposed law, which repeal the one year statute of limitations and the present compulsory automobile security law, St. 1925, c. 346, and its amendments, take effect on December 31, 1930, and the remainder "upon the passage of this act." The Attorney General made on the initiative petition a certificate in the words of "The Initiative," Part II, § 3 of art. 48 of the Amendments, and then the petition was filed with the Secretary of the Commonwealth. Parties have stipulated for the purpose of consideration of these cases that, since the institution of the present proceedings and not later than the first Wednesday of December, 1929, the required number of signatures remaining to be secured has been filed with the Secretary of the Commonwealth and that he intends to transmit the initiative petition as thus completed to the clerk of the House of Representatives upon the assembling of the General Court.

A preliminary question as to the power of the court to consider the issues raised by the petitions has been argued and must be decided. There are not to be found in article 48 of the Amendments to the Constitution any words indicative of a purpose that, respecting proceedings pursuant to its provisions, the courts are shorn of their ordinary powers. It is elementary in constitutional law under the Constitution of this Commonwealth that a duty is cast upon the judicial department of government, when the question is properly raised between litigants, to determine whether a public officer is overstepping constitutional bounds and whether statutes duly enacted conform to the fundamental law as expressed in the Constitution. It is a delicate duty, always approached with caution and undertaken with reluctance, but an imperative duty which cannot be escaped. The words defining the authority and obligation resting on

the Attorney General under "The Initiative," Part II, § 3 of art. 48 of the Amendments to the Constitution, import no more of unreviewable finality than do those of c. 1, § 1, arts. 3 and 4 of the Constitution and of art. 2 of its Amendments creating the legislative powers of the General Court, or those of art. 21 of the Amendments conferring upon commissioners power to divide the territory of the several counties into representative districts. Genuine controversy as to the conformity of acts of these bodies to the requirements of the Constitution is a justiciable subject and cognizable by the courts when properly presented. See, for example, *Portland Bank* v. *Apthorp*, 12 Mass. 252, 253; *Wellington, petitioner*, 16 Pick. 87, 95; *Larcom* v. *Olin*, 160 Mass. 102; *Perkins* v. *Westwood*, 226 Mass. 268, 271; *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335; *Attorney General* v. *Methuen*, 236 Mass. 564; *Attorney General* v. *Apportionment Commissioners*, 224 Mass. 598; *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42; *Juggins* v. *Executive Council*, 257 Mass. 386. It follows irresistibly from these indisputable premises that the certificate of the Attorney General under said § 3, Part II, "The Initiative," is open to inquiry as to its conformity to the Constitution in appropriate proceedings. That was decided in substance in *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91. It was stated in *Opinion of the Justices*, 262 Mass. 603, 606. Nothing contrary to these principles was decided in *Anderson* v. *Secretary of the Commonwealth*, 255 Mass. 366, or in *Thompson* v. *Secretary of the Commonwealth*, 265 Mass. 16. Without analyzing those decisions, it is enough to say that, if anything there said is thought to be of broader sweep, it must be narrowed to the particular facts of each case and be taken to be limited by the underlying principles upon which the present decision rests.

I.  The petitioners contend that the proposed law is not within the general scope of the provisions of art. 48 of the Amendments to the Constitution and offends against its provisions on several grounds, and that the certificate of the Attorney General was improvidently issued. Questions of that nature are put in issue by the pleadings. The petition-

ers are proper parties to enforce a public duty on the part
of the respondents such as is disclosed on this record. *Brooks
v. Secretary of the Commonwealth*, 257 Mass. 91.

The main design of the proposed law, in the light of its
title and of recent statutes to which it refers, in general
appears to be the adoption of some rational means calcu-
lated to diminish the frightful toll of life and suffering
exacted from the public by motor vehicles on public ways,
and to afford some protection to the injured against the
loss arising from that cause.

1. The first contention of the petitioners is that the
proposed law makes no provision for a judicial review of
the contributions required to be made to the "Fund" by
owners of motor vehicles and that therefore it falls within
"The Initiative," Part II, § 2, *Excluded Matters*, as being
"inconsistent with . . . the right of access to and protec-
tion in courts of justice." Reliance is placed in this connec-
tion on that part of the *Opinion of the Justices*, 251 Mass.
569, found at pages 610, 611. It there was said in substance
that, where rates to be charged for public utility service
by private persons or corporations were regulated by public
authority, provision must be made for judicial review of the
rates so established to the end that they may be reasonable,
yield a fair return upon the value of the property employed
after paying costs and carrying charges, and that final de-
termination of such rates could not be vested in a public
officer as was expressly provided in the proposed bill then
under consideration. What there was said, with ample
citation of authoritative decisions, is now adopted and
affirmed. That principle is not pertinent to the cases at bar.
The proposed law does not incorporate a private business
with capital stock and other investments to be managed
for profit by corporate officials elected by shareholders. It
does not provide for the fixing of rates to be charged by such
a corporation where rights in private property are involved.
It creates a body corporate with the powers there enumer-
ated and all others incident thereto. It establishes a *quasi*
public corporation. (See, for a somewhat similar method
of incorporation, G. L. c. 178, § 14.) It is without capital

stock and is to be managed by a board appointed by the Governor. The contributions to the "Fund" must be based on fair and reasonable classifications and must be commensurate with adequate, just and reasonable charges to accomplish the aims of the proposed law. The proposed law does not by express terms rest finality of decision as to contributions to the "Fund" in any individual or body. So far as concerns justness to the "Fund" of the contributions, they are to be fixed by the board. If too low, it would be due to want of wisdom. No injustice can be done to stockholders or to property rights of this *quasi* public corporation. If its rates are too low, it would be greatly embarrassed and doubtless would encounter complete disaster. But that presents no question under art. 48 of the Amendments to the Constitution. No constitutional guaranty exists against incompetence of public or *quasi* public officers. If the rates are unjust or unjustly discriminatory to the owners of motor vehicles, no appropriate appeal to the courts is closed to them. The "Fund" and the board are open to whatever remedies may under the law be invoked against them by persons having legal standing to that end. *Lehigh Valley Railroad* v. *Board of Public Utility Commissioners,* 278 U. S. 24, 37–41.

.We are of opinion that the proposed law is not vulnerable on this ground.

2. The proposed law provides that such proportion of all expenses of investigation of every motor vehicle accident involving personal injury (cast in the first instance upon the registrar of motor vehicles) as may be. agreed upon by the registrar of motor vehicles, the commissioner of the "Fund" and the chairman of the department of administration, shall be charged to the "Fund." It makes no provision for a judicial review of the decision of these public officers on this point. Whatever may be said about this provision in other respects, we think that it cannot rightly be held to be violative of any right "of the individual, as at present declared in the declaration of rights" touching "the right of access to and protection in courts," or to relate to the powers of courts.

3. It is argued that the proposed law contains matters excluded by that part of art. 48 of the Amendments to the Constitution found in "The Initiative," Part II, § 2, *Excluded Matters,* to the effect that "No measure that relates . . . to the powers . . . of courts . . . shall be proposed by an initiative petition." Several specifications are made in this connection.

(*a*) The repeal of the limitation of one year for bringing actions, contained in G. L. c. 260, § 4, as amended by St. 1925, c. 346, § 10, does not relate in any proper sense to the powers of the courts. A statute of limitations in truth concerns the remedy open to a party. It does not add to or take from the power of the courts.

(*b*) By the repeal of the existing law as to compulsory security by owners of motor vehicles against bodily injury or death caused by such vehicle, the proposed law does not in any right sense relate to the powers of the courts. The proposed law substitutes a different scheme for the present scheme for protection of travellers upon ways against bodily injury. Because of its main provisions, an essential part of the present scheme was an express clause for review of rates by the courts. Such express provision is not an essential part of the scheme of the proposed law. The proposed law is not aimed at the abolition of that express provision for review. If it were, a quite different question would arise. The main design of the proposed law is different from that of the existing law to be repealed. That main design does not relate either to the general or to the specific powers of the courts. A general law covering a subject disconnected with courts in its main features does not come within the prohibition of said art. 48 already quoted because, in an incidental and subsidiary way, the work of the courts may be increased or diminished or changed. There is nothing inconsistent with this conclusion in *Commonwealth* v. *Sacco,* 255 Mass. 369, 410, 411, where was under discussion, with reference to its referendum aspects, a law immediately relating to the powers of courts to grant a new trial.

4. The proposed law does not make a "specific appropriation of money from the treasury of the Commonwealth"

contrary to "The Initiative," Part II, § 2, *Excluded Matters*, of art. 48 of the Amendments to the Constitution. Definite contributions to the "Fund" must be collected by the registrar of motor vehicles and paid by him to the Treasurer and Receiver General, who is to be the custodian of the moneys of the body corporate known as the "Fund." He holds these, however, not as money of the Commonwealth but as money of the body corporate known as the "Fund." Such contributions do not go into the treasury of the Commonwealth. They are not subject to the protections or to the laws governing the disbursements of public funds. Amendment 63 to the Constitution has nothing to do with such contributions because they are not money received on account of the Commonwealth. They are received and are to be disbursed on account of the body corporate known as the "Fund" and in accordance with the orders of the board of commissioners who constitute its managers and have control of its affairs under the provisions of the proposed bill. See *Opinion of the Justices*, 261 Mass. 523, at page 550.

There is a certain awkwardness about constituting the chief fiscal officer of the Commonwealth the treasurer of a *quasi* public corporation receiving and disbursing funds which do not belong to the Commonwealth. That, however, is a matter of legislative expediency and not of constitutional limitation. In this connection the contributions to the "Fund" required of owners of motor vehicles must be regarded, not as excises or license fees, or other exactions under the taxing power of the Commonwealth. They belong to the same general class as the regulations respecting brakes, lights and such like matters as to motor vehicles, designed to protect the public travelling on public ways.

5. By the concluding section of the proposed law, § 5, provision is made that §§ 1 and 2 shall take effect on December 31, 1930, and the "remaining sections shall take effect upon the passage of this act." It is not accurate to refer to the approval by the voters of a law proposed by initiative petition as "the passage of the act." Art. 48 of the Amendments to the Constitution, "The Initiative," Part V, § 1. But it is not fatal in a constitutional sense.

A further provision of said § 1 of Part V, is to the effect that, if "approved by the voters" in the requisite manner, "it shall become law, and shall take effect in thirty days after such State election or at such time after such election . . . as may be provided in such law." This provision does not strike down as invalid the part of the concluding section of the proposed law already quoted. That quoted part is susceptible of the construction that the proposed law is to take effect immediately after the State election at which it shall be approved by the voters in the manner specified in said § 1 of Part V. Thus construed, it would not offend against the constitutional terms of said § 1.

6. A further contention is that the proposed law exceeds the limitations on the legislative power of the General Court, which are extended to the legislative power of the people under the initiative. No arguments have been addressed to us in support of this contention other than those already made upon other branches of the case and hitherto discussed.

All questions argued as to the conformity of the proposed law to art. 48 of the Amendments have been considered.

II. The petitioners further contend that the proposed law, assuming that it conforms to the general scope of said art. 48, is in its terms and effect violative of other provisions of the Constitution. Questions of the general constitutionality of the proposed law are not open to the petitioners in these proceedings. It does not appear that either of the respondents has undertaken to pass upon such questions. Plainly, no words in said art. 48 expressly authorize at this stage, respecting a law proposed under the popular initiative, judicial inquiry into its conformity to other provisions of the Constitution. It is a general principle that no one can question in the courts the constitutionality of a statute already enacted except one whose rights are impaired thereby. The judicial department of government has no power to inquire into the constitutionality of statutes by proceedings directly to that end. It is only when some person invokes their aid to protect him in his liberty, rights or property as secured under the Constitution against

invasion through the operation of a statute, that the courts examine objections to its constitutionality. Only those directly affected as to some personal interest by the operation of a statute can question its validity. Ordinarily strangers have no standing in the courts on such matters and to that end. This principle was early declared by this court and has been consistently followed. *McGlue* v. *County Commissioners*, 225 Mass. 59, 60, and cases there collected. See also *Gorieb* v. *Fox*, 274 U. S. 603, 606. Nothing inconsistent with that principle was decided in *Siegemund* v. *Building Commissioner of Boston*, 259 Mass. 329, 335, or in *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 92, 93, and cases there reviewed, where proceedings were entertained at the instance of those having no private interest for the enforcement of public duties. Reasons supporting that principle apply with at least equal force to judicial inquiry as to the constitutionality of a law proposed under the popular initiative, which may never become a statute and may never affect the private rights of any person.

The popular initiative relates to legislation. It is an extension of the instrumentalities for legislation. "The limitations on the legislative power of the General Court in the Constitution shall extend to the legislative power of the people as exercised hereunder." "The Initiative," Part II, § 2. There is no provision in the Constitution that a petition accompanied by a proposed bill shall not be presented to and received and considered by the General Court unless constitutional in every aspect. There is nothing in art. 48 of the Amendments altering or limiting with respect to it this general constitutional practice. The judicial department of government cannot interfere with the ordinary processes of legislation. *Boston* v. *Chelsea*, 212 Mass. 127. *Dinan* v. *Swig*, 223 Mass. 516, 519. *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95, 116. See *State* v. *Superior Court*, 92 Wash. 44; *State* v. *Charleston*, 92 W. Va. 61; *State* v. *Osborn*, 16 Ariz. 247; *People* v. *Mills*, 30 Col. 262; *Pfeifer* v. *Graves*, 88 Ohio St. 473, 487; *Pitman* v. *Drabelle*, 267 Mo. 78, 89.

Judicial inquiry of this nature differs essentially from that

already entered into in this opinion touching the conformity of the proposed bill to the requirements of said art. 48 in order to determine whether it has any standing under that article for transmission to the General Court by public officers.

Jurisdiction is vested in the legislative department of government to consider the constitutionality as well as all other features of measures "introduced into the General Court by initiative petition." See art. 48 of the Amendments, "The Initiative," Part III, *Legislative Action*. When under this Part of said art. 48 the proposed law shall be considered, there will be opportunity for the General Court or either branch thereof, if it so desires, to obtain advice as to its constitutional aspects from the Attorney General. G. L. c. 12, § 9. See also c. 3, art. 2, of the Constitution.

The questions argued and no others have been considered. The conclusion is that there is no such failure to conform to the requirements of said art. 48 as to prevent the transmission of the proposed law to the General Court for consideration.

As to each proceeding the order must be

*Petition dismissed.*