WILLIAM H. EVANS & others *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk.    May 10, 1940. — June 24, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Constitutional Law,* Referendum.  *Jurisdiction.*  *Mandamus.*

The question, whether the Attorney General properly performed the duty, imposed upon him as a part of the referendum procedure under art. 48 of the Amendments to the Constitution, of determining the description of the law to be printed on the ballot, was justiciable and was determined in mandamus proceedings against the Secretary of the Commonwealth to prevent the question being placed on the ballot.

A description of St. 1939, c. 454, determined by the Attorney General for placing on the ballot for a referendum of the question of approval of that statute, did not meet the requirements of art. 48 of the Amendments to the Constitution in that it tended to create an erroneous belief that certain additional taxes imposed by the statute were specified percentages of the value of the property taxed instead of being percentages of the amount of a tax under other laws; and also in that it referred to an additional excise tax as imposed on "business corporations," whereas it should have stated also that certain public service corporations, not included under the statutory definition of "business corporations," were to be made subject to an increased excise tax.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on March 15, 1940, for a writ of mandamus.

The case was reported by *Ronan,* J., without decision for determination by the full court.

*R. A. Cutter,* (*H. S. Davis* & *H. S. Whiteside* with him,) for the petitioners.

*E. O. Proctor,* Assistant Attorney General, for the respondent.

*S. Silverman,* by leave of court, submitted a brief as *amicus curiae.*

LUMMUS, J.   This is a petition for a writ of mandamus to restrain the respondent from submitting to the people at the coming State election by referendum under art. 48 of the Amendments to the Constitution, (The Referendum, Part III), the question of approval of St. 1939, c. 454. The case was presented to a single justice upon petition and answer (*Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111; *Dolan* v. *Commonwealth*, 304 Mass. 325; *Graham* v. *Special Commissioners of Suffolk County*, *ante*, 237), and was by him reported to the full court.

1. The statute in question, St. 1939, c. 454, imposed taxes upon the sale of cigarettes and additional taxes upon incomes, legacies, successions, and corporations, and provided in §§ 19, 20 and 21 that certain proceeds of such taxes shall be paid into the treasury of the Commonwealth and credited on its books to a fund to be known as the Welfare Reimbursement Fund, which, "subject to appropriation," shall be used for specified expenditures of the Commonwealth mainly in the reimbursement of cities and towns for welfare relief furnished.   The petitioners contend that there can be no referendum because by Amendment 48, The Referendum, Part III, § 2, a law "that appropriates money for the current or ordinary expenses of the commonwealth or for any of its departments, boards, commissions or institutions" is excluded from the referendum. The question is, whether the mere earmarking of funds for a certain purpose, where further legislation is necessary to withdraw them from the treasury, constitutes an appropriation.   See *Opinion of the Justices*, 126 Mass. 557, 601; *Kelley* v. *Sullivan*, 201 Mass. 34; *Horton* v. *Attorney General*, 269 Mass. 503, 511, 512; *Opinion of the Justices*, 300 Mass. 630; *Opinion of the Justices*, 302 Mass. 605; *Cincinnati Soap Co.* v. *United States*, 301 U. S. 308, 321.   That question is not answered by *Opinion of the Justices*, 297 Mass. 577, which related to a proposed constitutional amendment, offered by initiative petition, the effect of which was "to seize upon all the revenue' received from the designated sources and to appropriate it permanently to a specified public use."   If such an amendment should be adopted, the

Legislature would be bound by its mandate. It could not afterwards annul the earmarking of the funds, and devote them to other purposes, as it might under a mere statute like St. 1939, c. 454. But we do not find it necessary to decide the question stated, in view of the conclusion to which we have come upon another point.

2. Amendment 48 to the Constitution provides as to laws submitted to the people under either the initiative or the referendum that "each law submitted to the people, shall be described on the ballots by a description to be determined by the attorney-general, subject to such provision as may be made by law." It is contemplated that the Attorney General shall determine the description at an early stage of referendum proceedings, for the Amendment (The Referendum, Part III, § 3) provides that the Secretary of the Commonwealth "shall print at the top of each blank [for the use of subsequent signers] a description of the proposed law as such description will appear on the ballot." This must be done after the referendum petition signed by ten qualified voters has been filed and before such blanks are issued for the use of subsequent signers. The same description, under Amendment 48, General Provisions, Part IV, together with the full text of the law, and other information, must be contained in the printed information distributed by the Secretary of the Commonwealth to all registered voters. *Opinion of the Justices,* 294 Mass. 610.

It was settled in *Horton* v. *Attorney General,* 269 Mass. 503, that the acts of the Attorney General in performing the duties imposed upon him with respect to the initiative and the referendum, of making a certificate under Amendment 48, The Initiative, Part II, § 3, and of determining the description of a law to be printed on the blanks for signatures and on the ballots, may present a justiciable question as to the conformity of his acts to the constitutional requirements. See also *Opinion of the Justices,* 294 Mass. 610; *Opinion of the Justices,* 297 Mass. 582.

The constitutional provision requiring a description to be determined by the Attorney General was intended to

insure, first, that the signers of an initiative or referendum petition understand the law which they propose to submit to the voters, and, secondly, that the voters understand the law upon which they are voting.  If the description is not substantially adequate and accurate, a great safeguard of direct legislation is lost.  A description that conforms to the Constitution is a condition of submission of a law to the voters.  The provision for sending to the voters the full text of a law does not lessen the importance of the description.  In the first place, the signers do not receive the full text before signing.  In the second place, the Constitution recognizes that each, the description and the full text, has a value to the voters not possessed by the other. Neither can be deemed to supersede the other or to make the other unimportant.

In *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 98, 99, a law that allowed on the Lord's Day "any athletic outdoor sport or game, except horse racing, automobile racing, boxing or hunting with firearms," was held not fairly described as a law permitting baseball on the Lord's Day.  In *Opinion of the Justices*, 271 Mass. 582, 589, the requisites of a description were stated, and the description there under consideration was held inadequate in several respects.  In *Opinion of the Justices*, 297 Mass. 582, those requisites were restated, and the words "which provides that real estate . . . shall not in any year be taxed in an amount greater than two and one-half per cent" were held an inadequate and misleading description of a proposed constitutional amendment which declared that "No taxes on real estate shall in any year be levied, assessed or collected in an amount greater than two and one-half per cent."

A part of the description of the law before us is as follows: "This act . . . also imposes additional taxes equal to 15% of the amount of taxes assessed on incomes of inhabitants of the Commonwealth on account of the calendar year 1939 and 10% on account of the calendar year 1940;  provides for payment of such tax by fiduciaries out of funds due to beneficiaries under certain circumstances;  and an additional

tax of 15% and 10% on the amount of excise tax assessed on domestic and foreign business corporations for the same years respectively; provides that property subject to legacy and succession tax shall be subject to an additional tax of 15% with respect to property or interest passing or accruing on the death of persons who died during the calendar year 1939 and of 10% with respect to property or interests passing or accruing on death of persons who die in the calendar year 1940."

Turning to § 20 of the law, we find that the additional tax on legacies and successions amounts to "fifteen per cent of all taxes imposed by" other provisions of law "with respect to property or interests therein passing or accruing upon the death of persons who die in" 1939, and "ten per cent of all taxes imposed by said provisions with respect to property or interests therein passing or accruing upon the death of persons who die in" 1940. The description, declaring that "property subject to legacy and succession tax shall be subject to an additional tax of 15%" in certain cases and of ten per cent in others, tends to create the erroneous belief that the percentage stated is of the value of the property, and not the correct belief that the percentage stated is of the tax under other laws. The percentage of the property taken for the legacy and succession tax appears by the table in St. 1939, c. 454, § 22, to range from one per cent to fifteen per cent according to the relationship and amount involved. A flat increase of ten or fifteen per cent of the value of the property would be a startling change in an important branch of the law. Some signers and voters might be attracted by such a change, while many others would be repelled. The inaccuracy in the description cannot be dismissed as unimportant, or as relating to a minor detail of the law. It might well cause many voters to vote against the law. The fact that under the law as drawn increased legacy and succession taxes would cease on December 31, 1940, not long after the date when the law, if disapproved by the voters, would become inoperative, does not make the question moot or the inaccuracy harmless.

Moreover, the description declares that the law provides

for "an additional tax of 15% and of 10% on the amount of excise tax assessed on domestic and foreign business corporations for the same years [1939 and 1940] respectively." Turning to § 19 of the law, we find that the taxes so increased are those "levied under the provisions of sections thirty to sixty, inclusive, of chapter sixty-three of the General Laws, as appearing in the Tercentenary Edition, and all acts in amendment thereof and in addition thereto." By G. L. (Ter. Ed.) c. 63, § 30, as amended in immaterial respects, the expression "domestic business corporations" is given a technical meaning as including, with two exceptions, every corporation organized under or subject to G. L. (Ter. Ed.) c. 156. That chapter, by § 2 thereof, has no application to a corporation organized for the purpose of carrying on within the Commonwealth the business of a "railroad, electric railroad, street railway or trolleymotor company, telegraph or telephone company, gas or electric light, heat or power company . . . ." But under G. L. (Ter. Ed.) c. 63, §§ 55, 58, such public service corporations are taxed, and by St. 1939, c. 454, § 19, the taxes upon them are increased. The description fails to mention any such increase. Neither in our statutory nomenclature nor in common speech are such public service corporations included in the expression "business corporations." The description is inadequate and misleading in failing to mention an increase in taxes upon public service corporations.

Since the two inaccuracies just discussed vitiate the description, it is unnecessary to consider other alleged inaccuracies pointed out by the petitioners.

*Writ to issue as prayed for.*