NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12935


STEPHEN FOSTER[1] & others[2] vs.  COMMISSIONER OF CORRECTION &
others[3] (No. 2).


June 2, 2020.


Commissioner of Correction.  Parole.  Commissioner of Public
    Safety.  Governor.  Imprisonment, Safe environment.
    Constitutional Law, Sentence, Imprisonment, Cruel and
    unusual punishment.  Due Process of Law, Sentence,
    Commitment.  Practice, Criminal, Sentence, Execution of
    sentence.  Practice, Civil, Civil commitment.


    In Foster v. Commissioner of Correction (No. 1), 484 Mass.
,     (2020) (Foster [No. 1]), we denied the plaintiffs' motion
for a preliminary injunction and transferred the case to the
Superior Court for a final adjudication on the merits.  In this
opinion, we address the motions brought by the Governor and the
chair of the parole board (parole board) to dismiss the claims
against them.  For the reasons that follow, we allow the
Governor's motion and we allow in part and deny in part the
parole board's motion.

    Discussion.  1.  Allegations of the complaint.  In deciding
the motions to dismiss, we accept as true the factual

_____

    [1] On behalf of himself and all others similarly situated.

    [2] Michael Gomes, Peter Kyriakides, Richard O'Rourke, Steven
Palladino, Mark Santos, David Sibinich, Michelle Tourigny,
Michael White, Frederick Yeomans, and Hendrick Davis, on behalf
of themselves and all others similarly situated.

    [3] Chair of the parole board, Secretary of the Executive
Office of Public Safety and Security, and the Governor.

allegations of the complaint and the reasonable inferences that can be drawn from those facts in the plaintiffs' favor. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7 (2008). We do not address, let alone attempt to resolve here, the truth of those allegations; that is, whether in fact the conditions of confinement during the COVID-19 pandemic comport with State and Federal constitutional requirements, and whether the defendants have in fact "acted or failed to act with deliberate indifference." Foster (No. 1), 484 Mass. at    . Instead, our narrow focus is on whether the plaintiffs' complaint adequately "state[s] a claim upon which relief can be granted" against the Governor and the parole board,"[4] Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974); in other words, whether the allegations, if true, plausibly suggest an entitlement to any relief against these defendants. Iannacchino, supra at 635-636.

The complaint alleges that, by confining the plaintiffs "under conditions that put them in grave and imminent danger of contracting the COVID-19 virus, and failing to implement an effective mechanism to reduce the incarcerated population to a safe level, [the] [d]defendants are deliberately indifferent to the substantial risk of serious harm suffered by [the] [p]laintiffs." They allege that each of the defendants is (1) violating the plaintiffs' right to be free from cruel or unusual punishment and their right to substantive due process, as guaranteed under the Declaration of Rights in the Massachusetts Constitution, and as secured by G. L. c. 231A (count one); and (2) violating their right to be free from cruel and unusual punishment and their right to substantive due process as guaranteed by the Federal Constitution, and as secured by 42 U.S.C. § 1983 (count two). Additionally, the plaintiffs allege that confining persons who have been civilly committed under G. L. c. 123, § 35, in correctional facilities violates those individuals' rights to substantive due process under the Federal and State Constitutions, as secured by 42 U.S.C. § 1983 and G. L. c. 231A, respectively (count three).

By its terms, the complaint seeks injunctive relief pursuant to G. L. c. 231A and 42 U.S.C. § 1983. In particular, it seeks an order requiring the defendants, "their agents, officials, employees, and all persons acting in concert with them" to confine prisoners in particular ways; requiring certain

---

[4] The Governor has also moved to dismiss the complaint for "[l]ack of jurisdiction over the subject matter." Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974). Because of the result reached, we do not separately address the point.

medical and health arrangements; prohibiting the ongoing confinement in correctional facilities of persons civilly committed under G. L. c. 123, § 35; reducing the number of persons incarcerated in prisons and jails; and mandating that the parole board take certain actions. The complaint also seeks an order "[m]aximizing the use of commutation and clemency" by the Governor and "[m]aximizing the use of the Governor's emergency powers and all other available mechanisms to grant releases to all those who are vulnerable."

2. <u>Governor's motion to dismiss</u>. Although the complaint broadly alleges that the defendants have violated the plaintiffs' State and Federal constitutional rights, the specific allegations against the Governor are notably few. The complaint alleges that the "Governor has refused to act on his near plenary emergency powers when it comes to the health and safety of prisoners." The plaintiffs seek to compel the Governor to use his authority to order a reduction in the prison population, because, absent his exercise of authority, "[t]here have been no commutations, no furloughs, no increase in earned good times, no releases by the [Department of Correction] to home confinement, little if any increase in the use of medical parole, and no effort by the parole board to streamline the parole process or modify the criteria for release in light of COVID-19."

The plaintiffs are not entitled to relief against the Governor under the declaratory judgment statute, G. L. c. 231A, because the statute, by its terms, expressly does "not apply to the governor and council or the legislative and judicial departments." G. L. c. 231A, § 2. See <u>Milton</u> v. <u>Commonwealth</u>, 416 Mass. 471, 475 (1993); <u>Alliance, AFSCME/SEIU, AFL-CIO</u> v. <u>Secretary of Admin</u>., 413 Mass. 377, 377 n.1 (1992), and cases cited.

Nor is their position enhanced by invoking, as they do, the inherent power of this court "to say what the Constitution requires, when the question is properly presented." <u>Bates</u> v. <u>Director of the Office of Campaign & Political Fin.</u>, 436 Mass. 144, 168 (2002), quoting <u>Horton</u> v. <u>Attorney Gen</u>., 269 Mass. 503, 507 (1929), and citing <u>Marbury</u> v. <u>Madison</u>, 5 U.S. (1 Cranch) 137 (1803). Had they alleged that the Governor affirmatively took action that was unconstitutional, or that anything he has done actually caused harm to the plaintiffs from alleged constitutional violations, the situation may well be different. But they do not challenge anything the Governor has in fact done; they only complain of what they allege he could have done

but did not. And they certainly do not contend that the Governor had any direct, affirmative involvement in causing the challenged prison conditions. See Hannon v. Beard, 979 F. Supp. 2d 136, 141-142 (D. Mass. 2013) (no direct connection between prison conditions and Governor's actions), and cases cited. See also Brown v. Rhode Island, 511 Fed. Appx. 4, 5 (1st Cir. 2013) (dismissing claims against Governor where plaintiff did not challenge any affirmative acts of Governor). Moreover, the Governor cannot be found liable based on a theory of respondeat superior or vicarious liability, that is, on the theory that he is legally responsible for the conduct of those he appointed to government service or to the agencies they lead. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (vicarious liability not applicable in such actions); Brown, supra (respondeat superior theory of liability not available in such circumstances).

In short, the complaint claims that the Governor is liable for things he has not done. First, it alleges that he is responsible for failing to reduce the prison population by failing to exercise his executive authority to pardon and grant clemency. Second, it alleges that he has failed to exercise his emergency powers to mitigate the situation. These are not actionable claims. With respect to the first alleged failure to act, it is well settled that the Governor's authority to grant pardons and other clemency is exclusively an executive authority. See Part II, c. 2, § 1, art. 8, of the Massachusetts Constitution, as amended by art. 73 of the Amendments to the Massachusetts Constitution ("The power of pardoning offences . . . shall be in the governor, by and with the advice of council . . ."). This court cannot compel him to exercise it. See District Attorney for the Suffolk Dist. v. Watson, 381 Mass. 648, 667 n.10 (1980) (judicial branch cannot control executive clemency).

With respect to the second alleged failure to act, viz., the Governor's failure to utilize his emergency powers to mitigate the situation, this court should tread lightly in telling any Governor when or how to exercise his or her powers. It is one thing for a court to order a Governor to cease engaging in action the court has found to be unconstitutional; it is quite another for a court affirmatively to direct a Governor how to act. For that reason, among others, this court historically has been unwilling to order a Governor to act where the relief sought, if deserved, can be provided by means of a court order against some defendant other than the Governor. See Milton, 416 Mass. at 475-476; Rice v. Draper, 207 Mass. 577, 579

(1911).  Cf. LIMITS v. President of the Senate, 414 Mass. 31, 34 (1992).  If the plaintiffs in this case are indeed entitled to a remedy at the conclusion of the case, it can be provided by an appropriate order or orders directed to the other executive branch officials in the case.  See Milton, supra.  See also Barnes v. Secretary of Admin., 411 Mass. 822, 822 n.2 (1992).  As stated, there is no claim that the Governor himself, by any affirmative act he has taken, has "overstepp[ed] constitutional bounds."  Horton, 269 Mass. at 507.  And we are confident, as this court always has been, that any declaration that we or the Superior Court may ultimately issue requiring action by any of the remaining defendants will be met with prompt compliance. See LaChance v. Commissioner of Correction, 475 Mass. 757, 765 (2016), quoting Massachusetts Coalition for the Homeless v. Secretary of Human Servs., 400 Mass. 806, 825 (1987) (where declaratory judgment is directed to public officials, injunctive order is "generally unnecessary" because Massachusetts courts "assume that public officials will comply with the law declared by a court").  The Governor's presence is simply not necessary to provide any relief that a court may order in this case.

3.  Parole board's motion to dismiss.  The plaintiffs allege in their complaint that the parole board has "fail[ed] to implement an effective mechanism to reduce the incarcerated population to a safe level," and that there has been "little if any increase in the use of medical parole, and no effort by the parole board to streamline the parole process or modify the criteria for release in light of COVID-19."  The complaint in essence claims that the parole board is failing to take steps that it is empowered to take to protect the plaintiffs from COVID-19, and that its deliberate indifference to the plaintiffs' plight creates "a substantial risk of serious harm to [the plaintiffs'] health or safety."  Foster (No. 1), 484 Mass. at    .  Accordingly, the complaint seeks an order requiring the parole board to exercise its authority under G. L. c. 127, §§ 130 et seq., and 120 Code Mass. Regs. § 200.10 (2017) to make persons serving house of correction sentences eligible for early parole; to consider the dangers posed by COVID-19 when evaluating, as the statute requires it to do, whether "release is not incompatible with the welfare of society"; to presumptively grant parole to parole eligible individuals; to expedite the release of individuals who have been granted parole or medical parole; to ensure no prisoner is held beyond his or her "release to supervision date," see G. L. c. 127, § 130B; and to conduct parole hearings for parole eligible prisoners not

later than sixty days prior to their parole eligibility date, as required by G. L. c. 127, § 136.[5]

Accepting the allegations of the complaint as true, as we must in considering a motion to dismiss, we conclude that the plaintiffs have alleged facts which, if proved, are sufficient to state a constitutional claim that the parole board was deliberately indifferent to the risk of death and serious illness to certain prisoners, particularly elderly and medically vulnerable prisoners. See Iannacchino, 451 Mass. at 636. See also Good v. Commissioner of Correction, 417 Mass. 329, 334 (1994) (Commissioner of Correction proper party defendant where he had "ability to prevent harm"). The complaint alleges that the parole board has authority to implement effective measures to reduce the incarcerated population by, for example, expediting parole hearings and releases and, perhaps, considering the impact of COVID-19 as part of its assessment. If, as the plaintiffs contend, the parole board has been deliberately indifferent in its exposure of the prisoners to "unreasonable risks from the COVID-19 pandemic," Foster (No. 1), 484 Mass. at   , then the parole board's failure to act within, and to the extent of, its authority may, if such deliberate indifference is proved, entitle the plaintiffs to relief.

We recognize that the scope of the parole board's authority is defined by statute, see G. L. c. 27, § 4, and G. L. c. 127, §§ 130 et seq., and that "the court's equitable powers may not be used to provide relief that is contrary to statutory or constitutional requirements." McCarthy v. Governor, 471 Mass. 1008, 1010-1011 (2015), citing Haverty v. Commissioner of Correction, 440 Mass. 1, 8 (2003). See Immigration & Naturalization Serv. v. Pangilinan, 486 U.S. 875, 883 (1988) ("Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law" [citation omitted]). Where, however, the parole board has authority to act and it fails to do so, for example, by failing to consider early parole in circumstances that are "sufficiently compelling," see Committee for Pub. Counsel Servs. v. Chief Justice of the Trial Court, 484 Mass. 431, 452 (2020), quoting 120 Code Mass. Regs. § 200.10, or by failing to hold timely hearings, this court (and likewise the Superior Court) can exercise its equitable authority to require the parole board to exercise its statutory authority to remedy a constitutional

_____

[5] The plaintiffs do not oppose dismissal of the claim against the parole board relating to individuals civilly committed under G. L. c. 123, § 35.

violation, if such a violation were to be found.  Indeed, if the plaintiffs' constitutional claims were to prevail and if this court (or the Superior Court) were to order the population of incarcerated inmates to be reduced, the parole board would be a logical and necessary party to accomplish a reasonable and sensible remedial process.  See Richardson v. Sheriff of Middlesex County, 407 Mass. 455, 469-470 (1990).

Conclusion.  The Governor's motion to dismiss the complaint is allowed.  The parole board's motion is allowed only with respect to the claims of the individuals civilly committed under G. L. c. 123, § 35, and is otherwise denied.

So ordered.


James R. Pingeon for the plaintiffs.
Stephen G. Dietrick for Commissioner of Correction & another.
Ryan P. McManus, Special Assistant Attorney General, for the Governor.
Michael R. Byrne for the parole board.
The following submitted briefs for amici curiae:
Tatum A. Pritchard for Disability Law Center, Inc.
Rachael Rollins, District Attorney for the Suffolk district, & Hon. Jon Santiago, pro se.
Matthew R. Segal for American Civil Liberties Union of Massachusetts & another.