## OPINION OF THE JUSTICES TO THE SENATE.

In response to an order of the Senate respecting an initiative petition for a proposed law covering nine printed pages and entitled "An Act to create a Motor Vehicle Insurance Fund for the Purpose of Providing Compensation for Injuries and Deaths due to Motor Vehicle Accidents," the Justices answered as follows:

(1) The "description of the proposed law" did not fulfill the requirements of the pertinent provisions of art. 48 of the Amendments to the Constitution in several important particulars;

(2) A citizen of the Commonwealth constitutionally may not be required to make the contribution to the proposed fund as provided in said proposed law and be held to the terms of the contract as therein provided, as a condition precedent to the right to operate a motor vehicle on the ways of the Commonwealth, as defined in G. L. c. 90, § 1;

(3) The business of motor vehicle liability insurance is not such a public function or so subject to public regulation as to authorize the creation of a monopoly, such as is provided in said proposed law, and to require insurance therein as a condition precedent to the right to operate motor vehicles on such ways;

(4) It is not constitutional to require the registrant of a motor vehicle, as a condition precedent to the right to operate a motor vehicle on such ways, to forego his present right to contract for insurance in a company of his own choice and to require him to contract for the same in a "fund" as constituted in said proposed law;

(5) It would not be constitutional to deny to a person wishing to register a motor vehicle for use on the highways the option, given him by the law in force on April 15, 1930, of making a deposit of money

or securities, of filing a bond, or of providing an insurance policy, whether of a stock company or of a mutual company, from among some sixty or more insurance companies authorized to do business in the Commonwealth;

(6) It would not be constitutional to require a person, as a condition precedent to the right to operate a motor vehicle on such ways, to buy insurance of a concern whose only assets at the time the first contribution was accepted and the contract of insurance made would be the contribution received and the anticipation of other contributions, such assets being subject to a liability already incurred by loan necessitated for organization purposes, as provided by said proposed law;

(7) It would not be constitutional to require the registrant of a motor vehicle to purchase insurance in such a quasi-public corporation as would be established by said proposed law, which would be without the usual reserves and other safeguards required by law of insurance companies, in the absence of any guaranty of the solvency of such corporation by the Commonwealth;

(8) The proposed law, if enacted, would unreasonably create a monopoly and thereby violate the constitutional rights of companies now engaged in insuring under the present system of compulsory motor vehicle liability insurance;

(9) It would not be constitutional to subject the policy holders, in a mutual company organized under the laws of Massachusetts, to losses incident to the creation of a monopoly such as is established by said proposed law.

(10) The official machinery set up in said proposed law would not be subject to the requirements of art. 66 of the Amendments to the Constitution, relative to the organization of the executive and administrative work of the Commonwealth;

(11) It appeared that an amendment of G. L. c. 90, § 26, proposed in the act, in substance that the operator of every motor vehicle or trailer involved in an accident in which any person is killed or injured shall make reports there specified, disclosed nothing violative of the fundamental law;

(12) Provisions of §§ 29A, 33A and 34A, proposed by the act to be added to G. L. c. 90, contemplated an unconstitutional use of public funds and would be unconstitutional.

On March 27, 1930, the Senate adopted the following order:

WHEREAS, A document purporting to be an initiative petition for a proposed law under Article forty-eight of the Amendments to the Constitution, in the form shown by the petition blank, copy of which is submitted herewith, has been transmitted to the Clerk of the House of Representatives by the Secretary of the Commonwealth; and

WHEREAS, Said document and said proposed law (printed as House, No. 202, a copy of which is submitted herewith) have been referred for consideration to the joint committee on Insurance of the two branches of the General Court; and

WHEREAS, There is pending before the General Court, and likewise referred to said joint committee, the report of the special commission to study compulsory motor vehicle insurance and related matters, printed as Senate No. 280, a copy of which is likewise submitted herewith, in which certain important questions of constitutionality and other questions of law are suggested in connection with said document and said proposed law; and

WHEREAS, Grave doubt exists as to whether said Article forty-eight has been so far complied with that said document properly constitutes an initiative petition and therefore whether said proposed law is legally "introduced and pending" before the General Court so that the procedure required by said Article forty-eight in relation to measures proposed by initiative petitions should be followed; and

WHEREAS, Grave doubt further exists as to the constitutionality of the provisions of said proposed law, if enacted, therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the Senate on the following questions of law, which do not appear to have been raised before, or passed upon by, the Court: —

1. Does the "description of the proposed law" (as it appears on the petition blanks, copy of which is submitted herewith and as reprinted on pages 130 and 131 of said Senate, No. 280) required by said Article forty-eight to be printed at the top of each signature blank and also upon the ballot, meet the requirements of said Article forty-eight and adequately inform the voters as to the provisions of said proposed law, especially as to the differences between said provisions and the present system of compulsory motor vehicle liability insurance?

2. May a citizen of the Commonwealth be constitutionally required to make the contribution to the proposed fund

as provided in said proposed law and be held to the terms of the contract as therein provided, as a condition precedent to the right to operate a motor vehicle on the ways of the Commonwealth, as defined in section one of chapter ninety of the General Laws?

3. Is the business of motor vehicle liability insurance such a public function or so subject to public regulation as to authorize the creation of a monopoly, such as is provided in said proposed law, and to require insurance therein as a condition precedent to the right to operate motor vehicles on such ways?

4. Is it constitutional to require the registrant of a motor vehicle, as a condition precedent of the right to operate a motor vehicle on such ways, to forego his present right to contract for insurance in a company of his own choice and to require him to contract for the same in a "fund" as constituted in said proposed law?

5. Under the present law, a person wishing to register a car for use on the highways has the option of making a deposit of money or securities, of filing a bond, or of providing an insurance policy, whether of a stock company or of a mutual company, from among some sixty or more insurance companies authorized to do business in the Commonwealth. Would it be constitutional to deny him this option?

6. Would it be constitutional to require a person, as a condition precedent of the right to operate a motor vehicle on such ways, to buy insurance of a concern whose only assets at the time the first contribution was accepted and the contract of insurance made would be the contribution received and the anticipation of other contributions, such assets being subject to a liability already incurred by loan necessitated for organization purposes, as provided by said proposed law?

7. Is it constitutional to require the registrant of a motor vehicle to purchase insurance in such a quasi-public corporation as is established by said proposed law, which is without the usual reserves and other safeguards required by law of insurance companies, in the absence of any

guaranty of the solvency of such corporation by the Commonwealth?

8. Is the official machinery set up in said proposed law subject to the requirements of Article sixty-six of the Amendments to the Constitution, relative to the organization of the executive and administrative work of the Commonwealth?

9. If so subject, does said machinery conform to such requirements as affected by the existing organization of the executive and administrative work of the Commonwealth?

10. Do the provisions of said proposed law, especially those contained in proposed sections twenty-six, twenty-nine A, thirty-three A and thirty-four A of chapter ninety of the General Laws, contemplate the unconstitutional use of public funds for a purpose not public?

11. If a motor vehicle owner who is registered under the provisions of said proposed law is also insured against personal liability by a private insurance company of his own choice, would said provisions or any of them constitute an unconstitutional interference with his right to defend himself against such liability or the right of said insurance company to conduct such defense?

12. Would said proposed law, if enacted, unreasonably create a monopoly and thereby violate the constitutional rights of companies now engaged in insuring under the present system of compulsory motor vehicle liability insurance?

13. Would it be constitutional to subject the policyholders, in a mutual company organized under the laws of Massachusetts, to losses incident to the creation of a monopoly such as is established by said proposed law?

The "description of the proposed law," referred to in the first question in the order, was as follows:

The proposed law provides for the compulsory insurance of the liability of owners and operators of motor vehicles for accidental injury and death caused to others by the operation of such vehicles, in a body corporate,

created by the law itself, called the State Motor Vehicle Insurance Fund.

It further provides that such fund shall be under the control and management of a board of commissioners appointed by the governor; that at the time of registration of all motor vehicles or trailers, except those owned by corporations under the control of the Department of Public Utilities, or by a street railway under public control, or by the Commonwealth, or one of its political divisions, the registrant shall make a payment in the nature of a contribution to such fund; and that upon so doing he shall be deemed to be insured by said fund to the limit of $5,000 for injury to, or death of, one person, or $10,000 for injury to, or death of, more than one person in any one accident.

The amount to be paid by a registrant is established by the act and certain classifications of vehicles are set up; and it is provided that the board thereafter, from time to time, may modify, alter or revise classifications, and increase or decrease the amounts to be so paid.

It further provides for the investigation of accidents and the settlement of claims.

The board is required to file a report of its assets and liabilities with the Commissioner of Insurance on the same basis as other insurance companies, and is subject to examination by the said Commissioner. It also forbids, under penalties, the making or presenting of false statements to such board relative to accidents and the obtaining of money from the fund by false statements.

It further provides that there shall be no appropriations made by the Commonwealth for the expenses of the fund, and that the board may borrow a sum sufficient for organizing and carrying out the provisions of the law relating to this fund.

The present compulsory motor vehicle insurance law is to be repealed, as is also the existing law limiting the time for beginning actions of tort for bodily injuries or death to one year, and certain other acts inconsistent with the proposed law are also repealed.

The proposed law filled nine printed pages.

The order was transmitted to the Justices on March 31, 1930, and on April 15, 1930, they returned the following answers:

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions propounded in an order adopted on March 27, 1930, and transmitted to them on March 31, 1930, copy whereof is hereto annexed. These questions relate to an initiative petition for a proposed law under art. 48 of the Amendments to the Constitution.

The first question in substance is whether the "description of the proposed law," required to be printed at the top of each blank for signatures and also upon the ballot, conforms to the requirements of said art. 48 and adequately informs the voters as to the provisions of the proposed law. The words of said art. 48 on this point are in "General Provisions," Part III, that such proposed law "shall be described on the ballots by a description to be determined by the attorney-general," and in "The Initiative," Part II, § 3, that the Secretary of the Commonwealth "shall provide blanks for the use of subsequent signers [after the first ten], and shall print at the top of each blank a description of the proposed measure as such description will appear on the ballot," and in "General Provisions," Part III, that the "secretary of the commonwealth shall . . . cause such question . . . to be printed on the ballot . . . In the case of a law: Shall a law (here insert description . . .) be approved?" In said art. 48 there is no definition of the word "description." The debates of the Constitutional Convention which framed said art. 48 do not disclose any definition. Those debates indicate that the duty of preparing the description was cast upon the Attorney General to the end that one learned in the law and under a high official responsibility should draft that description. It would seem to be rational to infer that the purpose of the requirement that a description of the proposed law be printed on the

initiative petition blanks, provided by the Secretary of the Commonwealth to be signed by the requisite twenty thousand qualified voters, is that such signers may have before their eyes and in their minds when deciding whether to sign the petition an impartial statement of the dominant and essential provisions of the proposed law so that thereby they may obtain an accurate conception of its main characteristics. It may also be inferred that the reason for requiring the printing on the ballot of the same description is that the voter may have at hand some means for making up his mind whether to vote to approve or to disapprove the proposed law. Under "General Provisions," Part IV, the full text of each measure to be submitted, together with other information, must be sent to each voter. Nevertheless, the description must be printed on the ballot. "Description" in these circumstances signifies a fair portrayal of the chief features of the proposed law in words of plain meaning, so that it can be understood by the persons entitled to vote. It must be complete enough to convey an intelligible idea of the scope and import of the proposed law. It ought not to be clouded by undue detail, nor yet so abbreviated as not to be readily comprehensible. It ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy. It must contain no partizan coloring. It must in every particular be fair to the voter to the end that intelligent and enlightened judgment may be exercised by the ordinary person in deciding how to mark the ballot. The provisions of said art. 48 touching the description are mandatory and not simply directory. They are highly important. There must be compliance with them. *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 99.

It is to be observed that the title of the act copied from the act annexed to the initiative petition is easily susceptible of being misunderstood. That title is "An Act to create a Motor Vehicle Insurance Fund for the Purpose of Providing Compensation for Injuries and Deaths due to Motor Vehicle Accidents." Compensation in connection with personal injuries and death has come to mean a scale

of payments based upon injury or death without reference to negligence or other civil liability at law. That is the word used in connection with workmen's compensation with which large numbers of people are familiar. See workmen's compensation act, G. L. c. 152, §§ 26, 27, 28, 29, 31, 34, 35, 36, 37, 38, 39, 41. See also *Louis Pizitz Dry Goods Co. Inc.* v. *Yeldell*, 274 U. S. 112, 115. The proposed bill does not provide such compensation. It merely purports, according to the terms specified, to require owners of certain motor vehicles and trailers to furnish security for their civil liability on account of personal injuries caused by such motor vehicles and trailers. That is the correct title. It is the title of St. 1925, c. 346. It carries the implication of liability founded on negligence and not on injury regardless of negligence. This misleading title is not embodied in the "description"; but it is not corrected. While we should hesitate to say that, standing alone, this rendered the "description" defective, it may be mentioned in connection with other factors.

The "description" contains no reference to the highly responsible duties imposed by the proposed bill upon State officers. For example, all contributions to the fund must be collected by the registrar of motor vehicles and by him transmitted to the Treasurer and Receiver General, who is constituted the custodian of the fund and through whom all disbursements are to be made. In view of the number of motor vehicles in the Commonwealth, these collections and disbursements must involve very large sums of money and necessitate a great amount of work. The registrar of motor vehicles also must investigate every accident where personal injury in fact did or may result, for the purpose of ascertaining both whether criminal prosecution ought to be instituted and whether defence against claims for civil damages should be made. Inevitably he must employ a large corps of investigators for this purpose. Although there is reference in the "description" to an investigation of accidents, it contains nothing to indicate by whom the investigation is to be made. The laying of these heavy

burdens upon these officials of the Commonwealth is an essential and momentous feature of the proposed bill.

Reference is made in the "description" to the fact that the amounts to be paid by each owner of a motor vehicle are fixed by the bill. But there is no indication that this rate is to be uniform throughout the Commonwealth for each classification of motor vehicles. The "description" contains no reference to or explanation of the meaning of such flat rate. Rates hitherto have been established according to territorial zones. *Brest* v. *Commissioner of Insurance*, 270 Mass. 7. The "description" makes no reference to the fact that if the rates established by the bill or as changed from time to time by the commissioners prove to provide funds inadequate to meet the losses, that deficiency must be made up by an increase of rates for the following year, thus requiring payments from a body of individuals different from the body incurring the losses.

The "description" states that the "present compulsory motor vehicle insurance law is to be repealed, as is also the existing law limiting the time for beginning actions of tort for bodily injuries or death to one year, and certain other acts inconsistent with the proposed law are also repealed." This is apparently an attempt to describe §§ 1 and 2 of the proposed law as well as certain other repeals. This "description" does not confine the statement of repeal of the statute of limitations to actions of tort connected with motor vehicles. It is unrestricted in scope and comprehends all existing statutes touching actions of tort for bodily injuries or for death. This "description" is both inaccurate and insufficient. The repeal made by § 1 of the proposed law includes only the existing statute of limitations defining one year as the time for bringing "actions of tort for bodily injuries or for death the payment of judgments in which is required to be secured by chapter ninety." G. L. c. 260, § 4, as amended by St. 1921, c. 319, § 1; St. 1925, c. 346, § 10; St. 1929, c. 29, § 1. That is to say, it repeals the special statute of limitations as to actions of tort for bodily injuries

or for death upon ways of the Commonwealth arising from those motor vehicles and trailers whose owners must under existing law furnish security for such civil liability. The proposed law leaves untouched all other existing statutes limiting to one year the time for bringing actions of tort for bodily injuries or for death arising in other ways. There are a number of such statutes. See for example G. L. c. 153, § 6; c. 229, § 1 (as amended by St. 1929, c. 119, § 1), § 2 (as amended by St. 1921, c. 486, § 35), §§ 3, 10. These references may not be exhaustive. They are illustrative. The "description" is inaccurate in that it includes all these statutes as among those repealed. The "description" is insufficient in that by § 1 of the proposed law the limitation to one year after the rendition of the judgment for bringing suits in equity to enforce against an insurer payment of a judgment for personal injuries or death caused by the insured is repealed. That repeal is not required because "inconsistent with the proposed law." It relates to an independent and important matter, to which no reference is made in the "description."

We are of opinion that the "description of the proposed law" does not meet the requirements of said art. 48 and we answer the first question in the negative.

A body corporate to be called "The State Motor Vehicle Insurance Fund," hereafter called the "Fund," is to be created by the proposed bill. This is not a private business corporation in the sense in which those words are commonly used. It has no capital stock and no stockholders. It is to have no money with which to start business. Its only financial resources are the power to borrow and the right to receive contributions from owners of motor vehicles and trailers. It has elected no officers. Its managers, consisting of a commissioner and two associate commissioners, named "the board," are to be appointed by the Governor subject to approval by the Council. It is not designated as, nor attached to, a department of the Commonwealth. The members of the board are not subject to removal. They are not in any particular under the direction of the Governor or of any other officer

of the Commonwealth. The Commonwealth has no responsibility for the management of the corporation. The credit of the Commonwealth cannot be pledged to its support. The word "State" in the corporate name of the "Fund" imports no responsibility on the part of the Commonwealth. Many purely private corporations have the word "State" as a part of their corporate names. The term *quasi* public corporation was applied to the "Fund" in *Horton* v. *Attorney General*, 269 Mass. 503, 509, chiefly because under the provisions of the proposed law large numbers of the public would imperatively be brought into business relations with it and be deemed to be parties to contracts with it, not by their own volition but by coercion of law. That descriptive term was used in *Attorney General* v. *Haverhill Gas Light Co.* 215 Mass. 394, 398. See also Thompson on Corporations (2d ed.), §§ 32, 33; Cook on Corporations (8th ed.), §§ 891, 932. The board is given unrestricted power as to the administration of the "Fund." It has complete authority to appoint and to remove all subordinate officers and employees of the corporation, to fix their terms of service, to define their duties and to establish their compensation. No civil service or other laws govern them in this respect. While the Treasurer and Receiver General is the custodian of the moneys of the "Fund" and its disbursing agent, he is compelled to act in this capacity exclusively under the direction of the board and not, in any particular, subject to general laws governing his conduct as an officer of the Commonwealth. It seems to us plain that the "Fund" as established by the proposed law is not a public corporation in the sense that it is established as an instrumentality of government. Perhaps in strictly legal aspects and functions it would stand on the footing of a private corporation. See *Sloan Shipyards Corp.* v. *United States Shipping Board Emergency Fleet Corp.* 258 U. S. 549. Certainly it would differ in essentials from a corporation constituted by law as an agency or department of government. See *United States* v. *McCarl*, 275 U. S. 1; *Emergency Fleet Corp.* v. *Western Union Telegraph Co.* 275 U. S. 415.

The proposed law in the establishment of the "Fund" as

a corporation with its specified powers differs radically from statutes, which have been upheld, for affording compensation for certain damages done by dogs, *Blair* v. *Forehand,* 100 Mass. 136, 142, and by drunken persons, *Treasurer of Boston* v. *American Surety Co. of New York,* 217 Mass. 507, and for protection of titles registered in the Land Court, *Tyler* v. *Judges of the Court of Registration,* 175 Mass. 71.

If the "Fund" were designed to be a public corporation or agency for carrying on what was deemed to be a function or department of government, the proposed law plainly would be unconstitutional as establishing a new department in contravention of art. 66 of the Amendments. It is not necessary to consider other questions which would arise if it were such agency or department.

Powers of the Legislature respecting the control of travel on the highways and the regulation of the business of insurance are extensive. Those subjects were discussed at large in *Opinion of the Justices,* 251 Mass. 569, 594–597, 607–610. What there was said need not be repeated. *Interstate Busses Corp.* v. *Holyoke Street Railway Co.* 273 U. S. 45. Broad as those powers are, we are of opinion that they do not extend so far as to compel every owner of a motor vehicle (with exceptions not here material), before using it upon a highway, to pay tribute by contribution to such a corporation as is created by the proposed law. That there is a large business by existing corporations of insuring owners of motor vehicles against civil liability resulting from the operation of such vehicles on ways is matter of common knowledge. Such insurance is required by St. 1925, c. 346, and acts in amendment thereof. It is generally known that there is wide competition for business of this kind. It involves freedom of action on the part of the owners of motor vehicles and on the part of those competing for such insurance. In practical effect it seems plain that the proposed law, because of its compulsory features, would drive most competitive insurance out of business in the motor vehicle field, and create a substantial monopoly in the "Fund." The creation by such means of a monopoly in a private or *quasi* public corporation in the field of com-

petitive business goes outside the power of the Legislature. Monopolies are odious to the law. They may be created in public utilities, which in a sense are natural monopolies or monopolistic in character, all in the public interest and subject to regulation for the general welfare. *Commonwealth* v. *Dyer*, 243 Mass. 472, 486–489. But as to general business affairs they would interfere with the constitutional rights of every person to life, liberty and property, "including freedom to use his faculties in all lawful ways, 'to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned' . . . . These rights, however, are subject to limitations, arising under the proper exercise of the police power." *Commonwealth* v. *Strauss*, 191 Mass. 545, 550. *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477, 483. *Tyson & Brother* v. *Banton*, 273 U. S. 418. The creation of such a corporation as that designed by the proposed law, in our opinion, cannot be justified as an exercise of the police power.

Therefore, interpreting the questions solely with reference to the proposed law, confining ourselves strictly to its terms, and not considering abstract principles connected with the inquiries, we answer "No" to questions 2, 3, 4, 5, 6, 7.

For the same reasons and with the same limitations, we answer "Yes" to question 12 and "No" to question 13, recognizing at the same time that all property and rights of individuals and corporations are subject to every valid exercise of the police power even though it may drive certain persons out of business. *Opinion of the Justices*, 234 Mass. 597, 607–611 and cases there reviewed.

We answer "No" to question 8 because, as already stated, we interpret the proposed law to create a *quasi* public corporation with many aspects of a purely private corporation and not a corporation constituted as an agency or department of government. In view of this answer, it is unnecessary to answer question 9.

The provisions of § 26 in § 3 of the proposed law are in

substance that the operator of every motor vehicle or trailer involved in an accident in which any person is killed or injured shall make reports there specified. Its provisions as applied to conceivable cases may be drastic. If a state of fact should arise where by its operation constitutional rights would be infringed, it might be held inapplicable. *Sears* v. *Aldermen of Boston,* 173 Mass. 71, 80. *Magee* v. *Commissioner of Corporations & Taxation,* 256 Mass. 512, 518. In the main we perceive nothing violative of the fundamental law in this section.

The provisions of §§ 29A, 33A and 34A in § 3 of the proposed law impose upon the registrar of motor vehicles extensive duties of investigation as to motor vehicle accidents, the duty of collecting from every registrant of a motor vehicle all contributions to the "Fund" and transmitting such collections to the Treasurer and Receiver General, and impose upon the Treasurer and Receiver General the duty of being the custodian of the "Fund" and disbursing all payments due from it. It follows from these provisions that the employment of all investigators, clerks, assistants and other employees must fall upon these officers. These officers cannot be compelled to accept employees designated by such a corporation as the "Fund." It would be an unthinkable derogation from the sovereign power of the Commonwealth to require its officers such as are the Treasurer and Receiver General and the registrar of motor vehicles to accept as subordinates or employees persons appointed by the commissioner subject also to him both as to removal and as to salary. See § 41 of § 3 of the proposed bill. It is provided by § 29A that such proportion of the expenses of the investigations of motor vehicle accidents by the registrar of motor vehicles "as may be agreed upon by the registrar, the commissioner of the fund and the chairman of the department of administration and finance, shall be charged" to the "Fund." There is no provision that any other expenses thus imposed upon the registrar of motor vehicles and the Treasurer and Receiver General shall be paid by the "Fund." We do not think that the provisions of § 34A of § 3 are fairly to be construed

as requiring payment from the "Fund" of such expenses thus thrown upon these State officers. These expenses must be paid out of money raised by taxation. Such expenses are ancillary to the business of this corporation. Such a purpose is not public in its nature. It is elementary that public money can be expended only for public uses. The point involved in this question is quite different from the issue presented in *Horton* v. *Attorney General*, 269 Mass. 503, 511, 512, where it was held that the proposed law made no "specific appropriation of money from the treasury of the Commonwealth." A general and indefinite burden imposed upon the public treasury is wholly variant from a "specific appropriation," forbidden by said art. 48, "The Initiative," Part II, § 2, "*Excluded Matters.*" It falls within the concluding phrase of the first paragraph of that section, to the effect that, "if a law approved by the people is not repealed, the general court shall raise by taxation or otherwise and shall appropriate such money as may be necessary to carry such law into effect." We do not pause to consider the special difficulties attendant upon the ascertainment of the proportion of the expenses of investigation to be charged to the "Fund." We are of opinion that §§ 33A and 34A contemplate the unconstitutional use of public funds, and answer "Yes" to that part of question 10.

It seems to us that question 11 requires no answer in view of the answers to the other questions.

> ARTHUR P. RUGG.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> JAMES B. CARROLL.
> WILLIAM C. WAIT.
> GEORGE A. SANDERSON.
> FRED T. FIELD.