SALVATORE A. PARISI & others *vs.* CITY OF GLOUCESTER
& others.

Essex.    June 9, 1975. — December 29, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Zoning,* Amendment of by-law or ordinance.

The unanimous vote of a city council for passage of an amendment to
a zoning ordinance was not required under G. L. c. 40A, § 7, where
the written protest by owners of land affected by the amendment
did not contain a statement of reasons for their opposition. [681-685]

BILL IN EQUITY filed in the Superior Court on August
15, 1972.

The suit was heard by *Mason, J.*

*David B. Gardner* for the city of Gloucester & others.

*Thomas Bussone, II,* for the plaintiffs.

GOODMAN, J.    This is an appeal from a judgment de-
claring (G. L. c. 231A) invalid an amendment to the zoning
ordinance of the city of Gloucester which rezoned certain
property classified as "medium density residential" and
"neighborhood business" to "central business." The judg-
ment also enjoined the owners of the reclassified property
from using it in violation of the Gloucester zoning ordi-
nance as it read prior to the reclassification. The defendants
who appealed are the city of Gloucester and the owners
of the reclassified property — William Taliadoros, Dorothy
Taliadoros, and Michael Taliadoros. The plaintiffs (the
appellees) are owners of nearby properties who unsuccess-
fully protested to the city council against the rezoning
under G. L. c. 40A, § 7, and brought the bill for declaratory
and injunctive relief on which the judgment was entered.
The trial judge made findings and rulings; the evidence
is reported.

The attack on the amendment centered on its passage by less than a unanimous vote of the city council; the vote of the city council, composed of seven members, was five in favor of the amendment, one opposed, and one absent. The plaintiffs claim that their protest to the city council brought into play that part of § 7 which provides for passage of an amendment to a zoning ordinance only by unanimous vote of a council if it is composed of less than nine members and "in case there is filed with the city clerk prior to the close of the first hearing before the city council ... a written protest against such change, stating the reasons, duly signed by the owners of twenty per cent or more of the area ..." affected by the proposed zoning change. The statute is set out in full in the margin.[1] The defendants argue that the protest filed by the plaintiffs was vitiated by its failure to "stat[e] the reasons" therefor and that the two-thirds vote ordinarily required for a change in zoning (see fn. 1) was satisfied by the five "aye" votes.

The protest was addressed to the "Honorable Mayor and Members of the City Council", stated: "We, the undersigned, respectfully wish to be recorded in opposition to the petition of Mr. Taliadoros for re-zoning," and set out 39 signatures and addresses. It contained nothing more.

---

[1] General Laws, c. 40A, § 7, as amended through St. 1954, c. 368, §§ 1 and 2, provides: "No change of any zoning ordinance or by-law shall be adopted except by a two-thirds vote of all the members of the city council where there is a commission form of government or a single branch, or of each branch where there are two branches, or by a two-thirds vote of a town meeting; provided, that in case there is filed with the city clerk prior to the close of the first hearing before the city council or committee thereof a written protest against such change, stating the reasons, duly signed by the owners of twenty per cent or more of the area of the land proposed to be included in such change, or of the area of the land immediately adjacent, extending three hundred feet therefrom, or of the area of other land within two hundred feet of the land proposed to be included in such change, no such change of any such ordinance shall be adopted except by a unanimous vote of all the members of the city council, whatever its form, if it consists of less than nine members or, if it consists of nine or more members, by a three-fourths vote of all the members thereof where there is a commission form of government or a single branch, or of each branch where there are two branches."

Nonetheless, the trial judge found that the protest was effective to require unanimity because "[o]ne or more of the petitioners spoke in opposition to the zoning amendment at the hearing and stated the reasons for their opposition to the City Council." This was the premise on which he declared the amendment void; and the sole issue which the parties have argued as decisive of the validity or invalidity of the amendment is whether G. L. c. 40A, § 7, requires that the reasons for a protest thereunder be in writing as part of the written protest.[2] We believe that written reasons are mandated by G. L. c. 40A, § 7, if that statute is to be operative to require unanimity (or a three-fourths vote, see fn. 1) by a city council.

Grammatically, it is the "written protest" which is specified as "stating the reasons" and, as thus specified, is to be "duly signed." And we are not inclined to strain the grammatical structure unless we can say that the requirement that the reasons be in writing has no legislative purpose and that the deviation in this case is merely a "trivial procedural defect." *Canton* v. *Bruno*, 361 Mass. 598, 604 (1972). (Cf. concurring opinion by Cutter, J., at p. 610.) We do not believe that is so or that the requirement can somehow be viewed as merely directory rather than mandatory. Cf. *Cheney* v. *Coughlin*, 201 Mass. 204, 211-212 (1909); *Cullen* v. *Building Inspector of North Attleborough*, 353 Mass. 671, 679-680 (1968) (both holding that the time of performance by a public body does not go to the "essence of the thing to be done").

Statutes providing for a greater than majority vote of the appropriate governing body in order to override a protest of a given percent of the landowners affected by a proposed zoning amendment exist in many states. See *Trumper* v. *Quincy*, 358 Mass. 311, 312 (1970), and ma-

---

[2] The plaintiffs' bill also alleged "spot zoning" and various other defects in the enactment of the amendment. But the declaration in the judgment that the amendment is invalid, though stated in general terms, is not construed by the parties as involving any of these objections. We accept that construction and treat the case on the same footing.

terials cited. Such statutes are designed to give affected landowners "some leverage in the adoption or rejection of a propos[ed amendment]" (id. at 314) and are expressions of "the precise degree of extra diligence those citizens [whose property rights it is proposed to alter] will be guaranteed." *Id.* at 313. See *Opinion of the Justices*, 234 Mass. 597, 606 (1920). However, the landowners' leverage to invoke the unanimity requirement derogates from the normal legislative process by majority rule even more drastically than the statutory two-thirds rule (see fn. 1) which otherwise applies to the enacting of zoning amendments.[3] The limitations upon and conditions of that leverage must therefore be strictly enforced. *Viscusi* v. *Schenectady*, 198 Misc. 732 (N. Y. 1950). *Jalowiec* v. *Reile*, 61 Misc. 2d 909, 911 (N. Y. 1970). See *Strain* v. *Mims*, 123 Conn. 275, 280-281 (1937). Cf. *Koppel* v. *Fairway*, 189 Kan. 710, 712-713 (1962); *Johnson* v. *Montville*, 109 N. J. Super. 511, 517 (1970). McQuillin, Municipal Corporations, § 25.248, p. 171 (3d ed. 1965). 1 Yokely, Zoning Law and Practice, § 7-12, p. 349 (3d ed. 1965). Additionally, such conditions and limitations represent a legislative response to the conflict between the rights of the landowner and the public welfare (see e.g. *Raymond* v. *Building Inspector of Brimfield, ante*, 38 [1975]), and we must take care not to vary the balance it has set.

The explicit requirement for written reasons[4] in its

---

[3] The Bureau of Planning Programs, Massachusetts Department of Community Affairs, has criticized "the veto power given to a minority of the voters by the extraordinary majority requirements of Section 7," which makes it "unnecessarily difficult to enact progressive changes in existing by-laws." Enabling Legislation for Planning and Zoning; Study Report No. 1 — Zoning, May, 1971, p. 35.

[4] Predecessors of that section (St. 1920, c. 601, § 9, St. 1926, c. 216, and St. 1929, c. 39, codified as G. L. [Ter. Ed.] c. 40, § 30) did not contain that requirement, nor did the Standard State Zoning Enabling Act (United States Department of Commerce) (appearing in Anderson, American Law of Zoning, § 26:01 [1968]) which the commission that reported the 1933 legislative revision of the zoning statutes used as a model. 1933 House Document 1240, p. 34. The recommendation for the latest revision of the zoning law (1975 House Document 5600, p. 7) retains this requirement though changing the unanimity require-

present form has been in the statute since 1933. St. 1933,
c. 269, § 27. The effect of such a provision is, it seems to
us, to place on one who wishes to invoke this exception the
burden of identifying and articulating his reasons (or sub-
scribing and signing his name to reasons articulated by
others) with somewhat greater care and reflection than
may be involved in merely "wish[ing] to be recorded in
opposition" and leaving it to others to give the city council,
orally, reasons which may or may not be those which gave
rise to his opposition. The requirement may stem from
the notion, which has persisted at least since Francis Bacon,
that "writing ["maketh"] an exact man." Written reasons
may also preserve for the council considerations on which
to deliberate before coming to a decision after the hearings
are closed[5] and serve as a record on the basis of which the
council may be held accountable.

In connection with the analogous requirement that an
initiative petition (art. 48, Part II, § 3) contain a descrip-
tion of the measure it proposes, the Justices of the Supreme
Judicial Court have said "The provisions of said art. 48
touching the description are mandatory and not simply
directory. They are highly important. There must be com-
pliance with them." *Opinion of the Justices,* 271 Mass. 582,
589 (1930). *Brooks* v. *Secretary of the Commonwealth,*
257 Mass. 91, 99 (1926). This requirement "was intended

---

ment to a three-quarters requirement. We cannot say whether the ex-
plicit requirement for written reasons in the 1933 statute was regarded
as merely a clarification of the predecessor statutes or the addition of
a new requirement. Both views favor our conclusion. We note that
Anderson, who sets out two model zoning laws (§ 26:04) neither of
which contains a specific requirement for written reasons, includes two
protest forms which do so (§§ 30.14, 30:15). See *Farmer* v. *Meeker,* 63
N. J. Super. 56, 63 (1960), where the court in sustaining the sufficiency
of a protest petition noted: "It clearly presents adverse reasons or
argument and, thus, serves as an 'objection' or 'protest.'" The com-
parable New Jersey statute contains no explicit requirement for rea-
sons. Indeed, we have found no other statute that does.

[5] General Laws, c. 40A, § 6, contemplates a decision "within 90 days
after ... hearing."

to insure . . . that the signers of an initiative or referendum petition understand the law which they propose to submit to the voters." *Evans* v. *Secretary of the Commonwealth,* 306 Mass. 296, 298-299 (1940), quoted in *Barnes* v. *Secretary of the Commonwealth,* 348 Mass. 671, 674 (1965).

Accordingly, the judgment of the Superior Court is reversed, and a new judgment is to be entered declaring that the amendment to the zoning ordinance was validly enacted.

*So ordered.*